UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BANNER & WITCOFF, LTD )<br>)<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>MORSE ENTERPRISES LIMITED, INC.)<br>)<br>Defendant | Civil Action No. 07-1310 (ESH) |

**PLAINTIFF BANNER & WITCOFF, LTD., RESPONSE IN OPPOSITION TO**
**DEFENDANTS MOTION TO SET ASIDE DEFAULT JUDGMENT**

Banner & Witcoff, Ltd., Plaintiff, by and through Peter F. Axelrad, Matthew S. Evans, III, and Council, Baradel, Kosmerl & Nolan, P.A., its counsel responds herewith in opposition to the Defendants Motion to Set Aside Default Judgment and File Answer out of time and for reasons says:

**Background**

1. This Honorable Court entered a default judgment in this proceeding on October 9, 2007. On October 24, 2007 the Defendant filed a Motion to Set Aside Default Judgment and File Answer and Counter-Claim Out of Time.

2. The issue before this Honorable Court is whether in its discretion the Motion to Set Aside Default Judgment should be sustained. Plaintiff opposes this Motion and shows cause why in this Court's discretion it should deny the Motion to Set Aside Default Judgment.

**ARGUMENT**

3. It is clear that the decision to set aside a default judgment is a discretionary decision to be made by this Honorable Court. Keegel v. Key West & Caribbean Trading, Company, Inc., 627 F. 2nd 372 (D.C. Cir. 1980).

4. The trial court should balance whether the default was willful, the alleged defense meritorious and the prejudice to the plaintiff if the default were to be set aside.

5. A party does not need to act in bad faith for the courts to conclude that the parties acted willfully. A finding of willfulness falls between a negligent filing error (excusable) and a deliberate decision to default (not excusable). International Painters and Allied Trades Union and Industry Pension Fund v. H.W. Ellis Painting Company, Inc., 288 F. Supp. 2nd 22 (D.D.C. 2003).

6. Attached hereto are affidavits of undersigned counsel and a partner shareholder at Banner & Witcoff, the Plaintiff, as exhibits 1 and 2. A review of all of the affidavits filed both in favor of the motion and those herein suggest the following:

   a. The Defendant was notified by e-mail on July 31 and by overnight Federal Express received August 1, 2007 with a letter and copy of the complaint that was filed in this case. The letter is attached as Exhibit 1 herein.

   b. The Defendant was advised to communicate with the undersigned Peter F. Axelrad, counsel for the plaintiff if they wished to discuss this case short of service.

   c. The response according to Mr. St. Louis is that he got a letter from Mr. Axelrad in late August, 2007 and had communications with his office that were unproductive.

      d.      These assertions of Mr. St. Louis are false. There were no such discussions or communications. Mr. St. Louis never returned Mr. Axelrad's 10 telephone calls after Mr. St. Louis called him one time and left a message.

      e.      Having failed to accomplish anything Plaintiff then set out to and did serve the Defendant with this suit. The response was due September 24, 2007. No further communications were had except Mr. St. Louis' surprising efforts to communicate with the Plaintiff itself. Mr. St. Louis communicated with the Plaintiff itself from his own (St. Louis) private law firm. He was told on September 21st Plaintiff was not interested in his offer of settlement. He still did not hire counsel.

      f.      He then attempted to hire counsel. A very nice gentleman, Mr. Claxton apparently was rebuffed in getting a retainer. Missing from the affidavit is any representation that there was a retainer dispute. In any event, Mr. St. Louis was on notice that a default was oncoming and he didn't have any extensions beyond what Mr. Claxton may have told him was an extra week. On the other hand, Mr. Claxton well knew that the extension was personal to Mr. Claxton.

      g.      Mr. Claxton says he got a retainer agreement signed on September 25th but he didn't resign from the case for 8 full days. Neither Mr. Claxton or Mr. St. Louis tells us why but it is the suspicion here that it is because Mr. Claxton wanted a retainer up front and Mr. St. Louis didn't want to do it. It is certainly no different than his indifference in responding to the fees that they wouldn't pay the Plaintiff.

      h.      This is a case of sleeping on your rights and your obligations. It

3

also appears to be a case where they tried to get out of paying Mr. Claxton any fees up front and then they realized they had a default judgment and they had to deliver money in order to hire Mr. Carlson and his law firm.

7. We hear the old approach to claims for legal fees and that is, even though we have offered money in settlement before now since you have now served us and we have to swear under oath that we have a meritorious defense we now claim you have committed legal malpractice. This Court is now faced with the scenario that a malpractice law suit is being created in order to manufacture a meritorious defense.

8. It is respectfully urged that this Court look behind the conduct of Mr. St. Louis, the only representative of the Defendant that is filing anything or attesting anything before this Honorable Court. He is apparently the person fully in charge. This is a person who called Mr. Axelrad once, did not return more than 10 of his calls all having been left with voice mails and then wearing either the hat of the inside lawyer talked to people at the Plaintiff or wearing the hat of the outside lawyer improperly communicated to the Plaintiff. Mr. Altherr's affidavit shows that the communication from Mr. St. Louis to the Plaintiff was from Mr. St. Louis's private law firm.

9. Moreover, Mr. St. Louis was told that his proposal to give the Plaintiff a settlement was not acceptable and yet he still wrote a letter to Plaintiff after he was told not to send it. So he was spending his time and effort drafting something for whatever purposes we don't know but he didn't hire a lawyer and he knew or had reason to know that the answer was due that Monday, September 24th.

10. He did not do anything other than try to reach one lawyer in Washington and then presumably did not fund the needed retainer. We suspect that and believe it to

be accurate because there is a full disclosure in the affidavit of the payment of a retainer to Mr. Carlson but notably missing is any discussion of retainer regarding Mr. Claxton.

11.   Defendant's conduct does not show cause that this Honorable Court in its discretion should grant the motion.  Mr. St. Louis's conduct is attributable to the Defendant and it should not be permitted to start filing a legal malpractice case ( and defending the simple contract case herein) where they should be held in default.

Accordingly, Plaintiff prays that the judgment by default stand and the motion be denied.

Respectfully submitted,

_____/S/_____
Peter F. Axelrad
Bar No. 442431
Matthew S. Evans, III,
Bar No. 478556
Council, Baradel, Kosmerl
& Nolan, P.A.
125 West Street, 4th Floor
Annapolis, Maryland 21401
Annap. (410) 268-6600
D.C. (301) 261-2247

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of November, 2007, a copy of the foregoing Plaintiff Banner & Witcoff, Ltd.'s Response in Opposition to Defendants Motion to Set Aside Default Judgment was filed electronically filed using the ECF filing system. and transmitted electronically to:

>Matthew W. Carlson, Esquire
>Thompson O'Donnell, LLP
>1212 New York Avenue, N.W.
>Suite 1000
>Washington, D.C. 20005

/S/
_____
Peter F. Axelrad

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BANNER & WITCOFF, LTD        )
                             )
                             )
                             )
     Plaintiff               )
                             )
v.                           )    Civil Action No. 07-1310 (ESH)
                             )
MORSE ENTERPRISES LIMITED, INC.)
                             )
     Defendant

### AFFIDAVIT OF PETER F. AXELRAD

1.  I, Peter F. Axelrad, am over the age of eighteen (18) and am competent to testify.

2.  I am a partner/director of the law firm of Council, Baradel, Kosmerl & Nolan in Annapolis, Maryland.

3.  I am a member of the Bar of this Court and have been since 1994.

4.  I am filing this Affidavit in response to the Affidavits of Roland R. St. Louis, Jr. and Charles R. Claxton in the above proceeding which were in support of Defendant's Motion to Set Aside Default Judgment and File Answer Out of Time.

5.  Mr. St. Louis swears in his Affidavit in paragraph 3 that some time in late August of this year, he received a copy of a letter from me. Actually, on July 31, 2007, I sent a letter by e-mail to Gerald O'Connor, the CEO of Defendant, which letter is attached as Exhibit A. This same letter was also sent by Federal Express and was received by Mr. O'Connor on August 1.

6.  I have never written to or spoken with Mr. St. Louis.



7. In paragraph 4, Mr. St. Louis swears that he had at least two telephone conversations with my office to pursue settlement discussions which were unproductive. This is nonsense. As a matter of fact, Mr. St. Louis left me a voicemail on August 14 asking me to return his call. I called Mr. St. Louis on numerous occasions that week and the next week and left him approximately ten voicemail messages from Tuesday, August 14 forward. I spoke with his secretary, in detail, at least one time, which was on August 16. None of my many calls to Mr. St. Louis that week or those of the ensuing week were ever returned.

8. In Mr. Claxton's Affidavit he states that he spoke with me about this case on September 25. This is accurate. Mr. Claxton is also accurate when he said that I agreed to provide him a one-week extension of time to respond to the Complaint, and he is also correct that he asked me that if he, Mr. Claxton, needed an additional day or two, I said I would grant it to him. However I advised him that the extension was only to him personally as I had received no courtesy from Mr. St. Louis when he failed to return all my calls and that the Defendant was already in default.

9. It is also correct that Mr. Claxton advised me on September 25 that he anticipated knowing immediately whether he would be representing Morse. In fact, Mr. Claxton stated during our twenty-seven minute conversation on September 25, that he would know on or before Thursday, September 27, whether or not he would be in the case. We discussed the fact that the Defendant was in Florida and that it was a case where the Defendant failed to pay my clients' fees. Mr. Claxton and I had a courteous discussion about the fact that he would need to have substantial money up front if he was

going to defend a foreign company on a case where they failed to pay their legal fees. He said that he would advise me immediately if he was going to be in the case.

10. I did not receive any call from Mr. Claxton from that moment on throughout Thursday, September 27. I therefore knew that he was not going to be in the case and I proceeded in line with this Court's Order regarding default judgment to file same.

11. Mr. Claxton states that he determined that his firm would not undertake representation on October 3 and that he informed me by voicemail and email that he would not be representing the Defendant. It is correct that on October 3 he informed me by voicemail and email that he would not be representing Morse Enterprises. Attached as Exhibit B is Mr. Claxton's email to me on Wednesday, October 3, and my email back to him within the hour. As the Exhibit reflects, Mr. Claxton did advise me on October 3 that he would not be representing Morse Enterprise and he also advised it was kind of me to extend his time to answer. My email to him, which was never responded to, makes it very clear that in our conversation on Tuesday, September 25, in light of the problems I had in attempting to talk with Mr. St. Louis, that my extension of time to Morse was conditioned that it was personally only to Mr. Claxton, and I so confirmed that in writing. I also confirmed in writing, as is reflected in Exhibit B, that Mr. Claxton advised me that he would let me know by Thursday, the 27th of September, if he was going to be in the case and that if I had not heard from him by then, I should assume that Mr. Claxton was not going to be representing the Defendant.

12. I solemnly affirm on the penalty of perjury that the foregoing Affidavit is true to my personal belief.

3

Dated: November 5, 2007

_____
Peter F. Axelrad

Peter F. Axelrad<br>
E-Mail: Axelrad@cbknlaw.com<br>
Telephone Extension: 3409

July 31, 2007

Gerald O'Connor, CEO
Morse Enterprises Limited, Inc.
200 West Welbourne Ave.
Winter Park, Florida 32789

    Re:  *Banner & Witcoff, Ltd. v. Morse Enterprises Ltd., Inc.*
          <u>Civil Action No.        U.S. District Court for the District of Columbia</u>

Dear Mr. O'Connor:

    This letter is to advise you that our firm represents Banner & Witcoff, Ltd. On behalf of Banner & Witcoff, Ltd., we have initiated legal action in the United States District Court for the District of Columbia to recover the sum of at least $284,060.92 that Morse Enterprises Limited, Inc. owes to Banner & Witcoff, Ltd. for unpaid and past due invoices for legal services rendered, plus interest, costs and such further relief as may be required. The attached copy of the Complaint, which was filed with the U.S. District Court last week, is provided to you as a courtesy.

    We are in the process of arranging to effect formal service of the Complaint. However, should Morse Enterprises Limited, Inc. wish to discuss this matter in an attempt to resolve its unpaid and past due invoices before we get involved in the complications of litigation, you may contact me through either the above e-mail address or by telephone (410) 268-6600. We are willing to defer service of the Complaint for a brief period, up to fifteen days, to entertain settlement discussions, should Morse Enterprises be interested in satisfying the unpaid and past due invoices without incurring additional expenses for litigation.

    Please make no mistake. This suit involves a matter of principal that our client views as extremely important and will vigorously pursue. If Morse Enterprises has no interest in resolving this matter short of litigation, please let us know as soon as possible.

    We look forward to your prompt reply.

                                               Very truly yours,

                                               Peter F. Axelrad

Enclosure

EXHIBIT A

**Donna M. Cornelius**

| | |
|---|---|
| **From:** | Mail Delivery Subsystem [MAILER-DAEMON@pro28.abac.com] |
| **To:** | goc@keyplex.com |
| **Sent:** | Tuesday, July 31, 2007 1:54 PM |
| **Subject:** | Delivered: Return receipt |

**Your message has been delivered to the following recipients:**

goc@keyplex.com

Subject:

1

# Peter F. Axelrad

| | |
|---|---|
| From: | Peter F. Axelrad |
| Sent: | Wednesday, October 03, 2007 3:17 PM |
| To: | 'rclaxton@garsonlaw.com' |
| Subject: | Re: Banner & Witcoff litigation |

Thanks Rick. Got this and your v/m. It was a pleasure talking to you. To correct an unclear point in your e mail, please, I wish to remind you that I agreed during our phone conversation on Tuesday, Sept. 25, that you, and only you, would have an extension to answer. You said that you would let me know by last Thursday if you were going to be in case and if I had not heard from you by then I should assume you were not in. Best regards. Peter

----- Original Message -----
From: Rick Claxton <rclaxton@garsonlaw.com>
To: Peter F. Axelrad
Sent: Wed Oct 03 14:15:56 2007
Subject: Banner & Witcoff litigation

Peter,

This will confirm the message left on your voicemail this afternoon.

I will not be representing Morse Enterprises in this case. It was very kind of you to extend the time to answer while I was formally retained, but that will not be happening.

Thank you, again, for your courtesy.

Rick

Rick Claxton
Garson Claxton LLC
7910 Woodmont Avenue, Suite 650
Bethesda, Maryland 20814
Phone: (301) 280-2700 ext. 2711
Facsimile: (301) 280-2707
E-mail: rclaxton@garsonlaw.com
www.garsonlaw.com

**********Confidentiality Notice**********

This electronic message transmission contains information from the law firm of Garson Claxton LLC which may be confidential or protected by the attorney-client privilege and/or the work product doctrine. If you are not the intended recipient, any disclosure, copying, distribution or use of the content of this information is prohibited. If you have received this communication in error, please notify us immediately by e-mail and delete the original message.



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BANNER & WITCOFF, LTD )
)
    Plaintiff )
)
v. ) Civil Action No. 07-1310(ESH)
)
MORSE ENTERPRISES LIMITED, INC.)
)
    Defendant )

### DECLARATION OF ROBERT F. ALTHERR, JR.

1. I, Robert F. Altherr, Jr., am over the age of eighteen (18) years and am competent to testify.

2. I am a shareholder and Vice President of Banner & Witcoff, Ltd, the plaintiff in this action.

3. I am a member of the bar of this Court and have been since 1995.

4. On Thursday afternoon, September 20, 2007, Roland St. Louis, counsel for the defendant Morse Enterprises Limited, Inc. telephoned the Washington, D.C. offices of Banner & Witcoff, Ltd. and spoke to Banner & Witcoff, Ltd. shareholder and Vice President, Joseph M. Potenza and me. Mr. St. Louis' telephone call was placed on a speaker telephone in Mr. Potenza's office so that both Mr. Potenza and I could participate in the telephone conversation with Mr. St. Louis. This telephone call was the first time since the filing of the Complaint in this action that Mr. St. Louis communicated with a member of the Banner & Witcoff, Ltd. firm.

5. Mr. St. Louis told Mr. Potenza and I during this telephone call that Mr. St. Louis had been authorized to propose on behalf of Morse Enterprises Limited,

EXHIBIT 2

Inc. an offer of a payment in settlement of the lawsuit that Banner & Witcoff, Ltd. had brought to recover the legal fees that Morse Enterprises Limited, Inc. owed to Banner & Witcoff, Ltd.

6. In response to the settlement offer, I told Mr. St. Louis during the telephone conversation that neither Mr. Potenza nor had I had the authority to accept or reject a settlement offer, but that I would relate the settlement offer that Mr. St. Louis had made on behalf of Morse Enterprises Limited, Inc. to the appropriate persons at Banner & Witcoff, Ltd. who had such authority, for their consideration.

7. Mr. St. Louis then asked if it would be helpful if he wrote a letter proposing Morse Enterprises Limited, Inc.'s settlement offer. I responded to Mr. St. Louis that it was his decision as to whether he wrote a letter, but that I would relate the oral offer that he had made during the telephone call to the appropriate personnel at Banner & Witcoff, Ltd.

8. Mr. Potenza then told Mr. St. Louis during the telephone conversation that the fact that his oral settlement offer on behalf of Morse Enterprises Limited, Inc. would be presented to the appropriate personnel at Banner & Witcoff, Ltd. was not and should not be considered an acceptance or refusal of the settlement offer, and was not and should not be construed in any way to be an agreement to extend any deadlines for Morse Enterprises Limited, Inc. to respond to the Complaint that had been filed by Banner & Witcoff, Ltd.

9. The next morning, Friday, September 21, 2007, I telephoned the law offices of Roland St. Louis, P.A. in Coral Gables, Florida and asked to speak to Mr. St.

Louis. I was advised that Mr. St. Louis was not then at his law office. I left a message with the telephone receptionist, requesting that Mr. St. Louis return my telephone call that day and advising that it was not necessary for him to write a letter to Banner & Witcoff, Ltd.

10. At approximately 4:00 p.m. that same Friday, September 21, 2007, I again telephoned the law offices of Roland St. Louis, P.A. in Coral Gables, Florida This time, I spoke with Mr. St. Louis and advised him that the offer of settlement that he had made on behalf of Morse Enterprises Limited, Inc. had been related to the appropriate persons at Banner & Witcoff, Ltd for their consideration and that the settlement offer had been rejected, and as such, it was not necessary for him to write a letter regarding the settlement offer.

11. On the following Monday morning, September 24, 2007, I received a copy of a letter from Mr. St. Louis on KeyPlex letterhead, dated September 21, 2007, again repeating the settlement offer, despite the fact that Mr. St. Louis had been previously advised that the proposed settlement offer was not acceptable and no letter needed to be sent. The letter from Mr. St. Louis bore a facsimile transmission notation indicating that it was transmitted on Saturday, September 22, 2007 at 12:52 p.m., from the facsimile telephone number of the law offices of Roland St. Louis, P.A. in Coral Gables, Florida.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _Nov. 5, 2007_.

ROBERT F. ALTHERR, JR.